UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

ONE STOP 34, LLC,

                    Plaintiff,

          -against-

STIMDEL PROPERTIES (FL), INC.,

                  Defendant.

------------------------------------------------------------- x

**REPORT &
RECOMMENDATION**

19-CV-04011 (LDH) (PK)

**Peggy Kuo, United States Magistrate Judge:**

One Stop 34, LLC ("Plaintiff" or "One Stop") brought this declaratory judgment and breach of contract action against Stimdel Properties (FL), Inc. ("Defendant" or "Stimdel"). (Compl., Dkt. 1.)  The Complaint seeks a declaratory judgment construing a lease provision and damages for breach of contract in performance of the lease. (*See* Compl.)  Defendant filed an answer, asserting affirmative defenses and counterclaims for damages for breach of contract and declaratory judgments. (Amended Answer, Dkt. 16.)  Both parties seek attorneys' fees and costs.  (Compl. at 8; Amended Answer at 15-16.)

Defendant filed a Motion for Partial Summary Judgment (the "Motion," Dkt. 46.)  The Honorable LaShann DeArcy Hall referred the Motion to the undersigned for a report and recommendation.

For the reasons below, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

Unless otherwise stated, the following facts are taken from Defendant's Rule 56.1 Statement

("Def. 56.1," Dkt. 29-8), Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl. Response 56.1," Dkt. 38), the Exhibits attached to the Motion (Dkt. 47), and the Exhibits attached to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Opp.," Dkt. 48).

A.        The Lease and the Demised Premises

The material facts are largely undisputed.  Plaintiff is a New York limited liability company, and Defendant is a Florida corporation.  (Def. 56.1 ¶¶ 1-2; Pl. Response 56.1 ¶¶ 1-2.)  On December 15, 2017, Plaintiff signed an agreement to lease a property in Queens, New York from Defendant. (Def. 56.1 ¶ 3; Pl. Response ¶ 3; the "Lease," Ex. F to the Motion, Dkt. 47-7.)  The Lease describes the leased property as:

> that certain building known as 12-01 34th Avenue, Long Island City, Queens County, New York, containing approximately 63,000 rentable square feet of space (the "Building") and the land on which the Building sits, identified as Block 522, Lots 1 and 21…

(Lease at PL000000001.)  The Building and the land are together referred to as the "Demised Premises."  (*Id.*)  An attachment to the Lease more particularly describes the Demised Premises as running along 34th Avenue (Graham Avenue) between 12th Street (Sherman Street) and 13th Street and extending north along 12th Street and 13th Street 345.81 feet, with a line connecting the corners of the property on 12th Street and 13th Street.  (Ex. A to the Lease, Dkt. 47-7 at PL000000035.)

A survey attached to the Motion shows the Demised Premises as consisting of the Building and an area outside the building to its north.  (*See* Ex. G to the Motion, "Survey," Dkt. 47-8.)





*The Survey.*

The outdoor area spans the length of the block between 12th Street and 13th Street and is separated from the sidewalk on both streets by a closed fence. (*Id.*) It has four marked parking spaces and several loading docks. (*Id.*) The Lease makes no mention of any parking spaces or loading docks. (*See* Lease.) A brochure for the Demised Premises and the Adjoining Property which was "created by Stimdel's real estate broker, Avison Young" (Pl. Opp. at 6) described the Demised Premises as "a one (1) story older mill-constructed, fully sprinklered warehouse and storage facility, totaling 63,000-square feet," which included "Off-street loading and parking." (Ex. 1 to the Declaration of Daniel Gildin, "Gildin Decl.," Dkt. 48-3 at 3.) The brochure was not incorporated into or referenced in the Lease.

The Lease includes several provisions concerning the use of the Demised Premises. Section 3.1 notes that "the Demised Premises are leased to [Plaintiff] for subdivision into smaller units to be used by [Plaintiff]'s licensees." (Lease § 3.1.) Similarly, the Lease notes, "it is agreed that [Plaintiff]'s business is to license the use of space within the Demised Premises to one or more entities." (*Id.* §

3

10.11.)  Section 1.4(d) gives Plaintiff "the right to peacefully and quietly have, hold, occupy and enjoy the Demised Premises, subject to the terms of the Lease without any hindrance or molestation from Landlord or any person claiming by, from or under Landlord."  (*Id.* § 1.4(d).)  The Lease gives Plaintiff "exclusive control and possession of the Demised Premises," and Defendant "shall have no liabilities, obligations or responsibilities whatsoever with respect thereto accept [sic] as expressly set forth herein."  (*Id.* § 7.6.)  Plaintiff agreed that it had "inspected the Demised Premises and accepts the same on the date hereof, subject to the representations, warranties and covenants of Landlord in this Lease." (*Id.* § 7.1.)

Section 15.1 of the Lease states, in part, "This Lease may not be changed or terminated orally." (*Id.* § 15.1.)  There is also a merger clause that states, "This lease and the Schedules annexed hereto constitute the entire agreement between [Defendant] and [Plaintiff] referable to the Demised Premises, and all prior negotiations and agreements are merged herein."  (*Id.* § 15.5.)  The "Lease may be amended only in writing, signed by both [Defendant] and [Plaintiff]."  (*Id.* § 20.7.)

The Lease is governed by New York law.  (*Id.* at §§ 19.2, 20.8.)  In any action to enforce its terms, the Lease provides for reasonable attorneys' fees, expert's fees, related expenses, and costs to a prevailing party.  (*Id.* at § 19.3.)

Finally, "[t]he language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and neither strictly for nor against [Defendant] and [Plaintiff]."  (*Id.* § 20.4.)

The Lease neither provides for nor prohibits consequential damages in case of breach.  (Def. 56.1 ¶ 14; Pl. Response 56.1 ¶ 14.)

### B.    The Adjoining Property

Adjacent to the Demised Premises is Lot 29 of Block 522 of the Queens County Tax Map. (the "Adjoining Property" or the "Adjoining Premises," Def. 56.1 ¶ 15; Pl. Response 56.1 ¶ 15; *see also*

Compl. ¶ 13.)  The Adjoining Property consists of a building and an outside area with fourteen marked parking spaces.  (*See* Survey.)  The boundary between the Demised Premises and the Adjoining Property is marked by a yellow dividing line between the two outside areas.  (*See* Ex. 4 to Gildin Decl., Dkt. 48-7 at D003655-3656; Ex. 5 to Gildin Decl., Dkt. 48-8 at PL000000148.)  The two properties do not overlap. (Def. 56.1 ¶ 17 ("No portion of the Adjoining Property is a part of the Demised Premises"); Pl. Response 56.1 ¶ 17)  The Lease's description of the Demised Premises does not include the Adjoining Property.  (Def. 56.1 ¶ 16; Pl. Response 56.1 ¶ 16.)

Defendant also owns the Adjoining Property and leased it to DHL Express (USA), Inc. ("DHL").  (Deposition of Alejandro Onofrio, "Onofrio Depo.," Dkt. 47-17 at 15:18-16:9.)  Pursuant to the written lease with DHL, Defendant was to provide 35 parking spaces on the Adjoining Property. (*See* Ex. 4 to the Gildin Decl. at D003651.)

A brochure for the Demised Premises and the Adjoining Property describes the properties as "separated by a street-to-street shared loading area and parking lot."  (Ex. 1 to Gildin Decl. at 3.)

## C.    The Disputed "Common Area"

Plaintiff describes as the "Common Area" a strip of land "approximately 30 feet wide by 200 feet long, at each end of which is a driveway and gate through which vehicles, including large buses and trucks, enter the Demised Premises and the Adjoining Property."  (Compl. ¶ 13.)  Based on this description and the dimensions indicated on the Survey, the Common Area would extend from the gate on 12th Street to the gate on 13th Street for the width of the open gate on 12th Street.  (*See* Survey.) This "Common Area," despite Plaintiff's description, is located entirely on the Adjoining Property. (*See* Pl. Opp. at 10 ("The term Demised Premises … does not include the Common Area."))  The Lease makes no mention of the "Common Area," or of any common area that Plaintiff could use pursuant to the Lease that was outside the Demised Premises.

Plaintiff contends that "[t]he only access to the Demised Premises requires travelling through the fence gates and Common Area (outside of the Demised Premises)…" (*See* Pl. Opp. at 2.) However, there appear to be several access points from the street to the Building on the Demised Premises, including one access point on 12th Street, access points on 13th Street, and one access point on 34th Avenue. (*See* Survey; *see also* Pl. Opp. at 11 (admitting that there is access to the Building).) Alejandro Onofrio, the Vice President of Administration and Finance for Defendant and Ocasa (a sister company to Defendant), testified at his deposition that "small vehicles" and "reasonable size small trucks" may have been able to access the outside area of the Demised Premises by driving through the Building. (Onofrio Depo. at 69:8-73:18.)

Nevertheless, for some time after the parties signed the Lease, Plaintiff and its licensees were permitted to access the parking and loading area of the Demised Premises through the gates on the Adjoining Property. Onofrio testified, "My understanding is that One Stop has the right to access this property through the gates and then access their side of the property that they rented" and that "One Stop had the right to access the property from both gates." (*Id.* at 27:16-19, 29:18-20.) DHL employees also believed that Plaintiff could use the gates and area on the Adjoining Property to enter and exit the Demised Premises. In an email, one such DHL employee sought to work with Defendant to ensure that new parking spots planned for the Adjoining Property "are not blocking or preventing [O]ne [S]top from going in and out of their building[.]" (Ex. 4 to the Gildin Decl. at D003655.) Internally, another DHL employee expressed concern that "[i]f I park where they say we should have 5 extra spots. I will be blocking everyone on the other side in and it w[ould] cause issues." (*Id.* at D003654.)

In early 2019, issues arose regarding the use of the parking areas by Plaintiff and DHL. On February 7, 2019, Peter Rivas of Ocasa wrote to Plaintiff's CFO and In-House Counsel Douglas Bauer asking Plaintiff to change its parking configuration to avoid being blocked in by DHL's parked

6

vehicles.  (Ex. 3 to the Gildin Decl., Dkt. 48-6 at PL000000129.)  In response, Bauer asked,

> Is DHL claiming that they have the right to the entire yard except for the yellow lined area?  That cannot be true as the middle section (extending from the gate) is for use by us and DHL for ingress and egress.  I believe that they know this …

(*Id.* at PL000000129.)  Rivas replied that DHL is "aware that this is a common area and should not block the ingress or egress from gates to your side."  (*Id.* at PL000000128.)

On February 27, 2019, Bauer reported to Rivas that "[a]ll is quiet between DHL and us so I believe it is safe to assume that this issue has been dealt with."  (Ex. 5 to the Gildin Decl. at PL000000150.)  However, on February 28, 2021, Rivas wrote to Bauer,

> I believe there is a misunderstanding the way the common area in the parking lot was determined[.]  [Onofrio] just confirmed to me that the entire parking space was split with the yellow lined, so that both tenant have their parking area in the best possible way[.]  It is like as a fence placed in between.

(Ex. 5 to the Gildin Decl. at PL000000148 (grammatical and spelling errors in the original).)

On March 28, 2019, Defendant informed Plaintiff that it "was not authorized to continue to access the Demised Premises" via the Common Area.  (Compl. ¶ 15.)  At least as of April 24, 2019, Defendant "had allowed … DHL[] to park in the Common Area, thus partially blocking ingress and egress from the Demised Premises," including the gate on 13th Street.  (*Id.* ¶¶ 19, 20.)

### D.    The Sewage Leak

In or about March 2018, a sewage waste pipe on the Demised Premises ruptured and leaked (the "Sewage Leak").  (Def. 56.1 ¶ 19; Pl. Response 56.1 ¶ 19.)  Plaintiff arranged for repairs associated with the Sewage Leak and demanded reimbursement from Defendant for the costs of those repairs. (Def. 56.1 ¶¶ 20-21; Pl. Response 56.1 ¶¶ 20-21.)

On February 7, 2019, Plaintiff emailed Defendant requesting $27,722.53 as reimbursement for out-of-pocket costs associated with repairing the Sewage Leak.  (Ex. J to Def. Mot., Dkt. 47-11 at D000614.)  Plaintiff added,

> We had a myriad of other costs relating to [the Sewage Leak] as well (legal fees, having

> to give free rent, etc.).  However, we have decided to eat those costs in the interests of
> our relationship so long as the amounts due us are settled as soon as possible

(*Id.* at D000614.)  Over the next several days, the parties continued to negotiate the exact amount to

be paid.  On February 25, 2019, Defendant emailed Plaintiff, writing that Defendant's "investors

approved to reduce all expense related to repairs and maintenance of sewer from rent[.]  The total

amount should be $57,745.04[.]  This includes repairs sewer and what you have expensed on waste

removal."  (Ex. 5 to the Gildin Decl. at PL000000151.)  The email included a revised rent calculation

for March showing the credit of $57,745.04.  (*Id.*)  Plaintiff replied, "Agreed.  We will pay the rent per

below … I am happy this situation is behind us."  (*Id.* at PL000000150.)

There is no dispute that the rent credit was given and that the rent was paid.

### E.    Other Repairs

The Complaint alleges that on April 11, 2019, Plaintiff "advised [Defendant] that the roof on

the Building was leaking, causing damage to the interior of the Building and rendering portions of the

Building uninhabitable," but Defendant initially failed to repair the roof leak.  (Compl. ¶¶ 24-25.)  The

roof continued to leak and caused more damage.  (*Id.* ¶ 26-27.)  Plaintiff alleged that the roof leak and

Sewage Leak caused "a number of One Stop's Licensees" to vacate the Building.  (*Id.* ¶ 29.)  Eventually,

Defendant repaired the roof.  (*Id.* ¶ 28.)

Plaintiff also alleges that it informed Defendant on March 29, 2019 of a crack in one of the

Building's structural support beams.  (*Id.* ¶ 30.)  Some of Plaintiff's licensees "were required to evacuate

a portion of the Building due to safety concerns," and Defendant failed to take immediate action to

repair the beam.  (*Id.* ¶¶ 31-33.)  Plaintiff alleges that it "installed a temporary support beam in order

[to] prevent a possible structural collapse of the building, at its own cost."  (*Id.* ¶ 34.)  Plaintiff retained

a structural engineer to inspect the beam and issue a report documenting his findings, at a cost of

$6,000, after which Defendant arranged its own inspection and "installed its own support for the

beam."  (*Id.* ¶¶ 35-36.)  As of the date of the Complaint, Defendant had not "adequately' repaired the

cracked beam.  (*Id.* ¶ 36.)  Plaintiff alleges that, because of the cracked support beam, Plaintiff and some of its licensees could not occupy parts of the Building, resulting in lost license fees and other consequential damages.  (*Id.* ¶ 38.)

## II.    Procedural Background

Plaintiff filed the Complaint on July 11, 2019, seeking a declaratory judgment "that it is entitled to access and use the Common Area for ingress and egress for itself and its Licensees" (Compl. ¶ 44), and damages for breach of contract related to Defendant's refusal to permit use of the Common Area, and for Defendant's failure to maintain and repair the roof, plumbing, and support beams (*Id.* ¶ 46). Plaintiff seeks damages, out-of-pocket costs and consequential damages, along with attorney's fees, expenses, and "such other and further relief … to which it may be entitled."  (*Id.* ¶ 48; *id.* at 8.)

Defendant answered the Complaint and asserted three counterclaims.  (Amended Answer.) Defendant sought (1) breach of contract damages arising from various alleged violations of the Lease by Plaintiff, including "converting a loading dock located on the Demised Premises into parking spaces and subletting those parking spaces to sublessees," (2) declaratory judgment that Plaintiff and its licensees are not permitted to access or use the Adjoining Property, and (3) declaratory judgment that Defendant is not required to provide Plaintiff or its licensees access to the parking area through the Adjoining Property "because any inability to access the Parking Area by driving through the Building was caused entirely by Plaintiff's own modifications to the Building."  (Amended Answer ¶¶ 61-103.)  Defendant also seeks attorneys' fees, costs, and expenses.  (*Id.* at 16.)

Plaintiff filed an answer to the counterclaims on October 3, 2019.  (Dkt. 17.)

The parties engaged in and completed discovery.  (Joint letter certifying close of discovery, Dkt. 36.)  On January 28, 2021, Defendant filed the Motion (Dkt. 46-47), Plaintiff filed an Opposition (Dkt. 48), and Defendant filed a reply (Dkt. 49).  The Motion seeks (1) dismissal of Plaintiff's declaratory judgment claim, (2) dismissal of Plaintiff's breach of contract claim arising from

Defendant's refusal to allow access to the Demised Premises through the Adjoining Property, (3) dismissal of Plaintiff's claims for consequential and reputational damages, (4) dismissal of Plaintiff's claims for damages arising from the Sewage Leak,[1] (5) declaratory judgment that Plaintiff and its lessees are not entitled to access or use the Adjoining Property, and (6) reasonable attorneys' fees, disbursements, and costs.  (Motion at 1-2.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.  A "dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

"It is the movant's burden to show that no genuine factual dispute exists…." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).  Once the movant satisfies its burden, the party opposing summary judgment "must point to specific evidence in the record" demonstrating a genuine issue for

---

[1] Plaintiff "withdr[e]w its claim for damages arising from its expenditure of money to repair the sewage leak." (Pl. Opp. at 19 n.3), but not its claim for consequential damages.

trial and "cannot rest on allegations in the pleadings." *Id.* at 273.

Where contract interpretation is involved, "[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.,* 287 F.3d 61, 64 (2d Cir. 2002).

## DISCUSSION

### I.    Claims Regarding Access to the "Common Area"

Three of Defendant's requests in the Motion relate to the issue of whether Plaintiff is entitled to use the "Common Area" on the Adjoining Property to access the Demised Premises: (1) its request that the Court dismiss Plaintiff's claim for declaratory judgment that Plaintiff and Plaintiff's licensees are permitted such use; (2) its request that the Court grant Defendant's counterclaim for declaratory judgment that Plaintiff and Plaintiff's licensees are not permitted such use; and (3) its request that the Court dismiss Plaintiff's claim for breach of contract for Defendant's refusal to permit such use. (Motion at 1-2.)

The parties do not dispute that the Lease covers only the Demised Premises and does not grant Plaintiff the right to use any part of the Adjoining Property, including the Common Area. (Pl. Opp. at 10 n. 2 ("[t]he Demised Premises includes a parking area, but does not include access to the fence gates or Common Area….") Plaintiff contends, however, that absent any provision describing access to the parking and loading area of the Demised Premises, the Lease is "ambiguous," and therefore extrinsic evidence of the parties' intent should be considered, raising a genuine dispute of material fact. (*Id.* at 11.)

### A.    Contract Interpretation Under New York Law

There is no dispute that the Lease is governed by New York Law. (Lease §§ 19.2, 20.8; *see also* "Def. Mem. Of Law," Dkt. 47 at 8 n.4; Pl. Opp. at 2, 8, 17.)

"[T]he fundamental, neutral precept of contract interpretation is that agreements are construed

in accord with the parties' intent." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (N.Y. 1985)). "[W]hen parties set down their agreement in a clear, complete document, their writing should … be enforced according to its terms." *S. Rd. Assocs., LLC v. Int'l Bus. Machines Corp.*, 4 N.Y.3d 272, 277 (N.Y. 2005) (quoting *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (N.Y. 2004) (alteration in *S. Rd. Assocs.*)).

In resolving a dispute about the meaning of a contract, a court can look outside the four corners of an agreement only if it is necessary to resolve an ambiguity in the language of the contract. *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990). "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Id.* "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Greenfield*, 98 N.Y.2d at 569 (quoting *Breed v Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355 (N.Y. 1978) (alteration in *Greenfield*)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation … unless each is a 'reasonable' interpretation." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations omitted). "[A] court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract." *Omni Quartz*, 287 F.3d at 64 (citing cases); *see also S. Rd. Assocs.*, 4 N.Y.3d at 278 ("extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face").

It is well-settled that "[a]n omission or mistake in a contract does not constitute an ambiguity [and] … the question of whether an ambiguity exists must be ascertained from the face of an agreement without regard to extrinsic evidence." *Reiss v Financial Performance Corp.*, 97 N.Y.2d 195, 199 (N.Y.

2001); *see also Millgard Corp. v. E.E.Cruz/Nab/Fronier-Kemper*, No. 99-CV-2952 (LBS), 2003 WL 22741664, at *3 (S.D.N.Y. Nov. 18, 2003) ("under New York law, the omission of terms in a contract does not create ambiguity.") (quoting *Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151 (N.Y. App. Div. 1983)); *Greenfield*, 98 N.Y.2d at 573 ("[S]ilence does not equate to a contractual ambiguity") (citing cases).

"[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Greenfield,* 98 N.Y.2d at 569–70. "This principle is particularly important 'in the context of real property transactions, where commercial certainty is a paramount concern, and where … the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length." *S. Rd. Assocs.*, 4 N.Y.3d at 277 (quoting *Vermont Teddy Bear*, 1 N.Y.3d at 475 (alteration in *S. Rd. Assocs.*)). "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vermont Teddy Bear*, 1 N.Y.3d at 475 (quoting *Reiss*, 97 N.Y.2d at 199).

"Furthermore, where a contract contains a merger clause, a court is obliged 'to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" *Shron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (N.Y. 2013) (quoting *Matter of Primex Int'l. Corp. v. Wal-Mart Stores*, N.Y.2d 594, 599 (N.Y. 1997)).

Whether a contract is ambiguous is a question of law to be decided by the court. *Greenfield*, 98 N.Y. 2d at 569 (citing *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990)); *see also Omni Quartz*, 287 F.3d at 64.

## B.    Whether the Lease is Ambiguous

Plaintiff does not point to any language in the Lease that it claims to be ambiguous.  Rather, it argues that the Lease is ambiguous because it "does not expressly provide for any form of access to

a meaningful portion of the Demised Premises (everything other than the warehouse building, and even then no access to the loading docks), and without access the Lease makes no sense…" (Pl. Opp. at 11.) It finds ambiguity in that "although the Lease grants One Stop and its licensees use, possession and control of the Demised Premises, it does not, either expressly or otherwise, provide them with the means to use the Demised Premises for the purposes intended, since it does not provide access to the Demised Premises, as defined in the Lease, from a public street." (*Id.*)

What Plaintiff claims to be an ambiguity is, in fact, an omission, and omissions do not constitute ambiguity. *See Reiss*, 97 N.Y.2d at 199. Nothing within the language of the Lease itself suggests that the parties intended for Plaintiff and its lessees to have access to the parking area and loading docks of the Demised Premises by traveling through any portion of the Adjoining Property. Indeed, the Lease does not mention either the parking area or the loading docks. Certainly, there is no mention of the approximately 6000 square feet of land on the Adjoining Property which Plaintiff describes as the Common Area.

In the context of a commercial contract, New York courts are particularly reluctant to find ambiguity from absent terms. *See, e.g.*, *Vermont Teddy Bear*, 1 N.Y.3d at 475 (in construing commercial real property contracts, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.") (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (N.Y. 1978)). Because the Lease does not contain *any* term regarding access to the parking and loading area of the Demised Premises, there is no basis for finding that the parties intended to create such form of access, especially access entailing property not covered by the Lease.

Plaintiff argues, in the alternative, that the absence of a provision for access to the loading and parking area of the Demised Premises is "an omission as to a material issue," which can create an ambiguity. (Pl. Opp. at 13, citing *Hart v. Kinney Drugs, Inc.*, 67 A.D.3d 1154, 1156-57 (N.Y. App. 2009)

14

and *In re World Trade Center Disaster Site Litigation*, 754 F.3d 114, 122 (2d Cir. 2014) ("In limited circumstances, a court may supply a missing term in a contract.")).

Plaintiff's argument misconstrues the meaning of the term "omission" in this context. Every ambiguity in a contract is, essentially, the product of an incomplete or inconsistent description of a material term or contingency in a contract. Put simply, ambiguity arises from the absence of clarifying language. But Plaintiff does not seek to supply a missing material term in the Lease that would clarify the Lease. Instead, it seeks to add an entirely new and discrete provision: that of access to the parking and loading area.

Neither *Hart* nor *In re World Trade Center* supports Plaintiff's argument, because neither involved the addition of an entirely new provision to a contract. Instead, both cases allowed the admission of extrinsic evidence to cure ambiguity as to terms already contained in the underlying contracts. In *Hart*, a landlord and tenant entered into a memorandum of understanding that modified a prior rental agreement. The Appellate Division held that the memorandum was ambiguous as to whether it was intended to entirely replace the rent structures of the original agreement or to partially alter them. 67 A.D.3d at 1156-57. The court acknowledged an "anomaly *within the four corners of the memorandum* [that] suggests the possibility" of a missing term regarding the percentage rent structure for the three properties with increased base rents. *Hart*, 67 A.D.3d at 1156 (emphasis added). Thus, *Hart* identified an ambiguity within a term of the contract—the rental payments—and admitted extrinsic evidence to clarify that term. *See id.* Here, by contrast, a loading or parking area is never mentioned in the Lease, let alone any access to such area. Thus, nothing within the Lease suggests that a missing term was necessary to clarify any provision in the Lease.

In *In re World Trade Center,* the district court interpreted a settlement agreement term "Plaintiffs who dismiss" as including both plaintiffs whose dismissals were involuntary as well as those whose dismissals were voluntary. 754 F.3d at 117, 119, 123. The Second Circuit concluded, however, that

15

the contract was ambiguous because "reasonable minds could disagree" as to the meaning of "Plaintiffs who dismiss," noting that the agreement did not expressly state whether that phrase included or excluded involuntary dismissals, and that the definitions of terms within the agreement led to conflicting conclusions about whether involuntary dismissals should be included. *Id.* at 123-24. The appeals court thus remanded the case for the district court to consider extrinsic evidence of the parties' intent. *Id.* at 124. *In re World Trade Center* is, therefore, a standard application of the general rule that extrinsic evidence may be admitted only to clarify an ambiguity within a contract; it does not support Plaintiff's attempt to use extrinsic evidence to create an entirely new obligation otherwise unspecified or unsuggested in the Lease.

The other cases Plaintiff references in its opposition are similarly inapposite. In *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42 (2d Cir. 1988), the Court refused "to add an obligation to the contract between the parties which appears manifestly unreasonable on the record before us, rather than an obvious requirement of justice and fair dealing." The Second Circuit's decision not to impose a term where it was unreasonable does not suggest that the Court here should impose an entirely new term of access. *Haines v. City of New York*, 41 N.Y.2d 769 (N.Y. 1977) concerned the application of a default rule regarding whether a contract to perform services with no fixed duration was perpetual or terminable at will, and the Court of Appeals expressly stated that the rule it chose—that contracts without a fixed duration "will imply that they intended performance to continue for a reasonable time"—was not a general rule. *See id.* at 772-73. The narrow holding of *Haines* cannot be generalized to this case.

Plaintiff argues that without a term added to the Lease describing how Plaintiff can access the parking and loading area, Plaintiff's rights to the Demised Premises in the Lease would "become illusory" and the Lease would be "nonsensical." (*See* Pl. Opp. at 17.) However, Plaintiff does not cite any cases to support this argument, and New York law does not provide for such relief.

In any event, the absence of any provision about access to the parking area does not render the Lease nonsensical. Plaintiff's argument presumes that driving into the parking area and accessing the loading docks is essential to the Lease's purpose. (*See id.* at 10 ("absent the right to access the Demised Premises via the Common Area … the right to use and occupy the Demised Premises for the purposes intended becomes illusory, since vehicles cannot access the parking lot and loading bays within the Demised Premises without entering the parking area through the fence gates and traversing across the Common Area.")). But the best evidence of the Lease's purpose—the language of the document—does not support Plaintiff's position. *See Greenfield*, 98 N.Y.2d at 569 ("The best evidence of what parties to a written agreement intend is what they say in their writing."); *see also Acranom Masonry, Inc. v. Wenger Constr. Co.*, No. 14-CV-1839 (PKC), 2017 WL 4358751, at *13 (E.D.N.Y. Sept. 29, 2017) (declining to consider extrinsic evidence to add a term where the contract did not contain ambiguity on its face as to the parties' intent). As noted *supra*, the Lease does not mention the parking area, the loading docks, or the access gates. By contrast, it repeatedly mentions the Building.[2] The Lease laid out the metes and bounds of the Demised Premises, and the parties agreed that they inspected it, which would have made clear where there were and were not access points to particular parts of the property. (Lease § 7.1 ("Tenant has inspected the Demised Premises and accepts the same on the date hereof, subject to the representations, warranties and covenants of Landlord in this

---

[2] *See* Lease at PL000000001 (describing the Demised Premises as "that certain building … and the land on which the Building sits…"); § 1.4(b)(i) (Defendant "shall deliver the Building broom clean with all personal property removed"); § 1.4(b)(ii) ("the heating and electrical systems and all doors will be in good working order on the date possession is delivered to [Plaintiff]"); § 3.2(iv) (prohibiting use that would "cause or be likely to cause structural damage to the buildings or any part thereof"); § 7.2 (requiring Plaintiff to "take good care of the Demised Premises, including the Building and all facilities installed therein" and allowing renovation and installation of bathrooms); § 7.4 (prohibiting "any alterations, modifications, or improvements to the Building … without Landlord's prior written consent," except those "costing less than $25,000 per instance which do not affect the Building's systems or structure and do not penetrate the roof structure or membrane…"); § 16.3 (prohibiting signage "on the exterior of the Building or the exterior doors of the building, or elsewhere at any point within the Demised Premises, without prior written approval of [Defendant]"); Article 22 at PL000000033 (limiting Defendant's right to terminate lease based on demolition or alteration of material portion of the Building, but making no reference to the parking lot or loading docks).

Lease.")

Finally, Plaintiff urges the Court to look at the evidence of the parties' representations before and behavior after the signing of the contract with regard to Plaintiff's use of the Common Area. The marketing brochure describing "Off-street loading and parking" and a "shared loading area and parking lot" (Ex. 1 to Gildin Decl. at 3) was not incorporated into the Lease, so its terms are not controlling. *See Sioris v. 25 W. 43rd St. Co.*, 223 A.D.2d 475, 475 (N.Y. App. Div. 1996) (precluding reliance upon prior representations not incorporated into the lease where lease contained a merger clause). Moreover, actions by Defendant and DHL permitting Plaintiff access through the Adjoining Property for some time after the Lease was signed does not create a contractual obligation here. New York law prohibits consideration of such post-signing "course of conduct" extrinsic evidence when construing an unambiguous lease. *See, e.g.*, *Lockheed Martin* Corp. v. *Retail Holdings, N.V.*, 639 F.3d 63, 71 (2d Cir. 2011) ("Because the contract is unambiguous, it was error for the district court to consider extrinsic evidence of the parties' post-contract conduct.") Thus, despite Defendant's words and actions expressly permitting Plaintiff to use the Common Area to access the outside area of the Demised Premises, such conduct alone does not constitute a binding contract. The presence of the merger clause only strengthens this conclusion. (Lease § 15.5.) *See Shron*, 20 N.Y.3d at 436; *see also Millgard Corp.*, 2003 WL 22741664, at *5 ("Ambiguity sufficient to warrant admission of parol evidence despite a merger clause must be intrinsic to the document in question.")

Based on the above analysis, the undersigned finds that the Lease is unambiguous and does not provide for access to the Demised Premises through the "Common Area." Because there is no ambiguity within the Lease, the undersigned declines to consider extrinsic evidence.

### C.    Whether Plaintiff Can Recover Damages for Defendant's Refusal to Allow Access to the Demised Premises Through the Adjoining Property

Defendant moves the Court to dismiss Plaintiff's claim for breach of contract for refusing to permit access to and use of the "Common Area" within the Adjoining Property parking lot. (Motion

at 1.)  In order to prove a breach of contract claim under New York law, Plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

Because the Lease does not require Defendant to allow Plaintiff and its licensees access to the Demised Premises through the Adjoining Property, its refusal to permit use of the "Common Area" does not constitute a breach of the Lease.  Accordingly, the undersigned respectfully recommends that Defendant be granted summary judgment on Plaintiff's breach of contract claim based on denial of such access.

### D.   The Declaratory Judgment Claim and Counterclaim

The Motion requests that the Court dismiss Plaintiff's claim for declaratory judgment that Plaintiff "is entitled to access and use the Common Area for ingress and egress for itself and its Licensees," (Compl. ¶ 44) and that the Court grant Defendant's counterclaim for declaratory judgment declaring that Plaintiff and its agents and representatives "are not permitted to access or use the Adjoining Property" (Amended Answer ¶ 92).  (*See* Motion at 1-2.)

A declaratory judgment is available in federal court "to resolve a 'real question of conflicting legal interests.'"  *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations omitted).  The Declaratory Judgment Act requires that there be a "case of actual controversy" in order for a court to declare legal rights and other legal relations. 28 U.S.C. § 2201(a).  "'A justiciable controversy' may not be 'hypothetical or abstract' in nature, but rather must be 'a real and substantial controversy….'"  *FSP, Inc. v. Societe Generale*, No. 02-CV-4786 (GBD), 2003 WL 124515, at *4-5 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), and *adhered to on reconsideration*, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005).

A district court has discretion to exercise jurisdiction over a declaratory judgment action.

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). "In a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* (quoting 28 U.S.C. § 2201(a) (emphasis in original).) "In order to decide whether to entertain an action for declaratory judgment, [the Second Circuit has] instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389 (citing *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969)).

Both Plaintiff's claim for declaratory judgment and Defendant's counterclaim for declaratory judgment hinge on resolution of the same issue that forms the basis of Plaintiff's breach of contract claim, *i.e.,* Plaintiff's entitlement to use the Adjoining Property to access the Demised Premises. Courts routinely decline to grant declaratory judgments that "seek[] resolution of issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *George & Co., LLC v. Spin Master Corp.*, No. 19-CV-04391 (RPK)(SJB), 2020 WL 7042665, at *5 (E.D.N.Y. Nov. 30, 2020) (quoting *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006)); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. 16-CV-6370 (SJF)(AYS), 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017), *aff'd*, 736 F. App'x 274 (2d Cir. 2018) ("Courts have deemed '[a] cause of action for a declaratory judgment [a]s unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract.'") (quoting *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 135 (N.D.N.Y. 2008)) (alteration in *Zam & Zam*)).

Here, resolution of that portion of Plaintiff's breach of contract claim that it is based on Defendant's refusal to grant Plaintiff and its licensees access to the "Common Area" also resolves the issue on which the parties seek declaratory judgments. The Court's interpretation of the Lease in

order to determine whether there was a breach of contract makes clear the entitlements at issue in the proposed judgments. Therefore, declaratory judgment on the issue of whether Plaintiff must be permitted or denied use of the Adjoining Property to access the Demised Premises would be duplicative and not serve a useful purpose. As such, declaratory judgments would be inappropriate.

Accordingly, the undersigned respectfully recommends that the Motion be denied as to Defendant's request for declaratory judgment that Plaintiff and its agents and representatives are not permitted to access or use the Adjoining Property, and granted as to the request for dismissal of Plaintiff's declaratory judgment claim.

## II.    Plaintiff's Other Damages Claims

Defendant seeks summary judgment on Plaintiff's claims for (1) any consequential damages because they were not within the parties' contemplation and Plaintiff has not pointed to any evidence of such damages, (2) damages arising out of the Sewage Leak because of an accord and satisfaction, and (3) any reputational damages because such damages are not recoverable under New York law and there is no evidence of them.

### A.    Whether Plaintiff Can Recover Consequential Damages

Defendant argues that, as a matter of law, Plaintiff is not entitled to consequential damages for lost license fees because the parties did not contemplate consequential damages in the making of the contract, and that even if Plaintiff were so entitled, there is no evidence of such damages. (Def. Mem. Of Law at 16-19, Reply at 8-9.) Plaintiff counters that whether the parties contemplated consequential damages is a question of fact that precludes summary judgment. (Pl. Opp. at 17-19.)

"It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Kenford Co. v. Cty. of Erie*, 73 N.Y.2d 312, 319 (N.Y. 1989) (*Kenford II*). "Special, or consequential damages, which 'do not so directly flow from the breach,' are also recoverable in limited circumstances." *Bi-Econ.*

21

*Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192 (N.Y. 2008) (quoting *American List Corp. v. U.S. News & World Report,* 75 N.Y.2d 38, 43 (N.Y. 1989). "When a non-breaching party alleges a loss of profits on collateral business arrangements as a result of a breach, the claim is considered one for consequential damages." *Lorena Int'l N. Am., Inc. v. Vican Trading*, No. 08-CV-2686 (CPS)(SMG), 2009 WL 1940428, at *3 (E.D.N.Y. July 2, 2009) (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007)); *see also Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000) ("The type of consequential damages most often sought is lost operating profits of a business.") (citation omitted).

> To recover consequential damages,
>
> it must be shown that: (1) the damages were caused by the breach; (2) the alleged loss must be capable of proof with reasonable certainty, and (3) the particular damages were within the contemplation of the parties to the contract at the time it was made.

*Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404 (N.Y. 1993) (referring to *Kenford Co., Inc. v. Erie Cty.*, 67 N.Y.2d 257, 261 (N.Y. 1986) (*Kenford I*)).

It is not necessary here to decide whether consequential damages were foreseeable and within the contemplation of the parties at the time the contract was made, because Plaintiff has failed to point to any evidence that damages were caused by the breach or that the damages can be proven with reasonable certainty. Although Plaintiff alleges lost license fees and other damages caused by the breach, it cites to no evidence to support its claim. (*See* Pl. Opp. at 18-19.) *See also Salahuddin*, 467 F.3d at 273 ("[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment.").

One email filed in support of Plaintiff's Opposition references Plaintiff's allegation that it is entitled to "actual lost revenues due to licensees having vacated the damaged area" as a result of the Sewage Leak, but Plaintiff does not identify which licensees vacated the area, how much Plaintiff lost in revenues, and how such lost license revenues were linked to the Sewage Leak. (Ex. 6 to Gildin Decl.

at D000515; Ex. 7 to Gildin Decl., Dkt. 48-10 at PL000000177.)[3]  Plaintiff does not rely on this email in its briefing, and this conclusory claim is insufficient to satisfy Plaintiff's burden on summary judgment.  *See Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, No. 08-CV-4462 (LDH)(ST), 2018 WL 4344941, at *1 (E.D.N.Y. Sept. 11, 2018) ("To survive summary judgment, the non-movant must present concrete evidence and rely on more than conclusory or speculative claims.") (citing *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)).

Because Plaintiff has not offered any evidence to support two necessary elements of a consequential damages claim—causation and provability—the undersigned respectfully recommends that summary judgment be granted in favor of Defendant as to Plaintiff's consequential damages claims.

### B.    Whether the Doctrine of Accord and Satisfaction Bars Plaintiff's Damages Claims Relating to the Sewage Leak

Defendant argues that the doctrine of accord and satisfaction warrants summary judgment on Plaintiff's damages claims relating to the Sewage Leak.  (Def. Mem. Of Law at 19-20; Reply at 10.) While Plaintiff has withdrawn its claim for repair costs related to the Sewage Leak (Pl. Opp. at 19 n.3), it continues to assert its claim for lost license fees, arguing that such consequential damages are "clearly outside the scope of the rent abatement which forms the basis of the accord and satisfaction theory." (*Id.*)

As discussed in the previous section, because there is no evidence of consequential damages, Plaintiff's remaining claim for damages arising from the Sewage Leak fails.  But even if it were entitled to consequential damages, the scope of the rent abatement for the Sewage Leak expressly included those damages, and Plaintiff's claim is barred by accord and satisfaction.

"An accord and satisfaction, as its name implies, has two components.  An accord is an

---

[3] The same email is reproduced in both Exhibits 6 and 7 to the Gildin Declaration.

agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim. Execution of the agreement is a satisfaction." *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (N.Y. 1993). "As a general rule, the acceptance of a check in full settlement of a disputed, unliquidated claim, without any reservation of rights, operates as an accord and satisfaction discharging the claim." *Nationwide Registry & Sec., Ltd. v. B & R Consultants, Inc.*, 4 A.D.3d 298, 299 (N.Y. App. Div. 2004) (citing cases). "[T]he doctrine requires a 'clear manifestation of intent by the parties that the payment was made, and accepted, in full satisfaction of the claim.'" *Rosenthal v. Quadriga Art, Inc.*, 105 A.D.3d 507, 508 (N.Y. App. Div. 2013) (quoting *Nationwide Registry & Sec., Ltd. v. B & R Consultants, Inc.,* 4 A.D.3d 298, 300 (N.Y. App. Div. 2004)).

Here, Plaintiff agreed to accept a rent credit in lieu of any other claims. Plaintiff demanded reimbursement for the costs incurred in repairing the Sewage Leak. (Def. 56.1 ¶ 21; Pl. Response 56.1 ¶ 21.) Plaintiff's CFO and in-house counsel wrote to Defendant that Plaintiff "decided to eat" the "myriad of other costs relating to [the Sewer Leak]," including "legal fees, having to give free rent, etc. … so long as the amounts due [Plaintiff] are settled as soon as possible." (Ex. J to Def. Mot. at D000614.) Although the parties continued to negotiate the exact amount of the rent credit, Defendant eventually offered a $57,745.04 rent credit, which Plaintiff accepted. (Ex. 7 to Gildin Decl. at PL000000150-151.) In accepting the rent credit, Plaintiff's CFO and in-house counsel noted that he was "happy this situation is behind us." (*Id.* at PL000000150.) The terms of the agreement are unambiguous and encompass the consequential damages that Plaintiff "decided to eat."

The agreement was then executed. (Def. 56.1 ¶¶ 22-23; Pl. Response 56.1 ¶¶ 22-23.) Because there is no genuine dispute of material fact, the undersigned finds that Plaintiff's claim for consequential damages arising from the Sewage Leak is barred by accord and satisfaction.

Accordingly, the undersigned respectfully recommends that summary judgment be granted in favor of Defendant as to Plaintiff's consequential damages claims related to the Sewage Leak.

### C.    Whether Plaintiff Can Recover Reputational Damages

Defendant also seeks summary judgment on Plaintiff's reputational damages claims.  (Def. Mem. Of Law at 20.)  "In general, damages to reputation 'are not recoverable in a breach of contract action under New York law.'"  *Premier Fla. Auto Sales & Leasing, LLC v. Mercedes-Benz of Massapequa, LLC*, No. 10-CV-4428 (DRH)(WDW), 2013 WL 2177785, at *5 (E.D.N.Y. May 20, 2013) (quoting *Ainbinder v. Money Center Fin. Group, Inc.,* No. 10-CV-05270 (SJF)(AKT), 2013 WL 1335997, *10 (E.D.N.Y. Feb. 28, 2013), *R&R adopted*, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013).  "However, damages to reputation may be available where a plaintiff can prove specific business opportunities lost as a result of its diminished reputation." *Premier Fla. Auto Sales*, 2013 WL 217785, at *5 (citing cases) (internal quotations omitted).

Defendant contends that there is no evidence of any specific lost business opportunities.  (Def. Mem. Of Law at 20.)  Plaintiff does not make any argument on this point in its Opposition (*see* Pl. Opp.), and Defendant argues that Plaintiff therefore concedes it is not entitled to reputational damages (Reply at 10).  The absence of evidence of specific lost business opportunities entitles Defendant to judgment as a matter of law as to reputational damages.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof") (internal quotations omitted).

Accordingly, the undersigned respectfully recommends that summary judgment be granted in favor of Defendant as to Plaintiff's reputational damages claims.

## III.    <u>Whether Defendant Can Recover Attorneys' Fees and Costs</u>

Defendant seeks reasonable attorneys' fees and costs related to this action.  (Motion; Def. Mem. Of Law at 21.)  "[I]n a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute

or court rule." *TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 515 (N.Y. 2008). The Lease expressly provides for attorneys' fees and costs. (Lease § 19.3 ("In any action or proceeding to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover such party's reasonable costs of suit, including reasonable attorneys' and expert's fees and related expenses, in addition to all other recovery or relief.").

Because resolution of the Motion does not completely resolve this case, including other pending claims related to breach of contract, the undersigned respectfully recommends that Defendant's motion for fees and costs be denied with leave to renew upon final resolution as to all claims in this matter.

## IV.    Conclusion

For the foregoing reasons, the undersigned respectfully recommends that the Motion be granted as follows: that the Court dismiss that portion of Plaintiff's claim for breach of contract that is based on Defendant's refusal to allow Plaintiff and its licensees access to the Demised Premises through the Adjoining Property; that the Court deny recovery of any consequential damages, reputational damages, and damages arising from the Sewage Leak; and that the Court dismiss Plaintiff's claim for declaratory judgment.

The undersigned respectfully recommends that the Motion to be denied as to Defendant's Second Counterclaim for declaratory judgment. The undersigned further respectfully recommends that the Court deny Defendant's request for attorneys' fees and costs without prejudice, but with leave to renew its request after trial or other resolution of all claims and counterclaims in this action.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge


Dated:    Brooklyn, New York
          September 4, 2021